UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG ATAIDE, | Case No. 26-cv-02226-NW |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |
| SELENE FINANCE, LP, | Re: ECF No. 3 |
| Defendant. | |

Before the Court is Plaintiff Craig Ataide's motion for a temporary restraining order ("TRO") to enjoin Defendant Selene Finance, LP ("Selene Finance") from proceeding with a scheduled foreclosure sale of Plaintiff's property. Having considered the parties' briefs, the relevant legal authority, and the arguments put forth by counsel at the April 14, 2026 hearing, the Court GRANTS Plaintiff's motion.

## I.      BACKGROUND[1]

Plaintiff is a homeowner of a property located in Carmel by the Sea, California ("the Property"). On November 31, 2022, Plaintiff took out a loan against the Property for $2,200,000.00 with CALCAP Lending LLC.

On June 17, 2024, Defendant was assigned as the servicer for the loan. "[A]round that time, Plaintiff was diagnosed with leukemia and fell behind on his mortgage payments." ECF No. 3-1 at 2.

On February 24, 2025, Defendant recorded a notice of default against the Property. A few months later, on April 4, 2025, Plaintiff submitted a complete loan modification application with

---

[1] The factual background is drawn from Plaintiff's complaint. *See* ECF No. 1.

supporting documents to Defendant.  Plaintiff alleges that he was not contacted by Defendant in the weeks following his application submission.

On May 29, 2025, before Plaintiff received a response to his loan modification application, Defendant recorded a notice of a trustee's sale against the Property.

On June 2, 2025, Plaintiff received a letter from Defendant denying his loan modification application.  The denial letter stated: "Does not meet program eligibility requirements."

Subsequently, Plaintiff submitted additional loan modification applications on June 9, 2025, and on November 20, 2025.  Defendant sent Plaintiff letters denying his applications on June 11, 2025, and on November 28, 2025, respectively.

Plaintiff initiated this case against Defendants on March 13, 2026, bringing three claims: (1) violations of California Civil Code Section 2923.6; (2) violations of California Civil Code Section 2923.7; and (3) violations of Cal. Business & Professions Code section 17200, *et seq*.

Defendant scheduled a trustee's sale of the Property for March 17, 2026.  On March 16, 2026, Plaintiff filed a motion for a temporary restraining order to prevent the trustee's sale.

On March 16, 2026, the Court set a hearing and a briefing schedule on the motion, and ordered: "To preserve the status quo, Defendant is prohibited from completing the foreclosure sale on Plaintiff's property while the TRO application is pending."  ECF No. 7.  Defendant opposed Plaintiff's motion for a TRO, and Plaintiff filed a reply.  ECF Nos. 14, 15.

## II.    LEGAL STANDARD

Courts use the same standard for issuing a temporary restraining order as that for issuing a preliminary injunction.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (internal quotation marks and citation omitted).  An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

United States District Court
Northern District of California

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20.  The Ninth Circuit has applied a sliding scale approach to these factors, where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits"); *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (preliminary injunction may issue if the plaintiff demonstrated serious questions going to the merits – which is a lesser standard than likelihood of success on the merits – if the balance of equities "tips *sharply* in the plaintiff's favor," and the plaintiff establishes that they are likely to suffer irreparable harm, and that an injunction is in the public interest).

**III.     DISCUSSION**

### A.     Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits of his requested relief.   Plaintiff asserts three claims, including two under California's Homeowner Bill of Rights, California Civil Code Section 2923.4, *et seq*.  The Homeowner Bill of Rights is intended to provide borrowers with a "meaningful opportunity" to apply to for loss mitigation options, such as loan modifications or other alternatives to avoid foreclosure.  Cal. Civ. Code § 2923.4.

First, Plaintiff alleges that Defendant proceeded with the trustee's sale while his loan modification application was still pending in violation of California Civil Code Section 2923.6. Section 2923.6(c) provides that:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

Cal. Civ. Code § 2923.6(c).  The parties agree that Plaintiff's April 4, 2025 loan modification application was his first application.  The parties also do not dispute that Defendant responded to Plaintiff's first application on June 2, 2025.  Defendant's June 2, 2025 letter was the first notice to

Plaintiff that his application had been denied, indicating that Plaintiff's application was pending until June 2, 2025. Nevertheless, Defendant filed a notice of trustee's sale on May 29, 2025, a few days before sending the rejection letter. During the hearing, counsel for Defendant conceded that the May 29, 2025 notice was improper. The Court finds that Plaintiff is likely to succeed on the merits of his Section 2923.6 claim.

Second, Plaintiff alleges that Defendant did not properly provide him with a "single point of contact" to communicate about his loan modification application with, in violation of California Civil Code Section 2923.7. Section 2923.7(a) states, "[w]hen a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7. Plaintiff contends that he "was never assigned a single point of contact and was never contacted by a Selene Finance representative regarding the [April 4, 2025] application." ECF No. 3-3 at 6. Defendant argues that it fulfilled its obligations by assigning a single point of contact via letter on March 13, 2025. *See* ECF No. 14 at 5, Ex. B. However, Defendant sent this letter a few weeks *before* Plaintiff filed his loan modification application. The Court finds that there are at least serious questions going to the merits of Plaintiff's claim regarding whether Defendant met its obligation to "establish a single point of contact" "[w]hen a borrower requests a foreclosure prevention alternative." Cal. Civ. Code § 2923.7.

Finally, Plaintiff asserts that Defendant's actions in violation of the Homeowner Bill of Rights also violated California's unfair competition law, Cal. Business & Professions Code section 17200, *et seq*. ("UCL"), as unlawful business practices. Because Plaintiff has adequately alleged violations of the Homeowner Bill of Rights, and the UCL claim is derived from the same violations, the Court finds that Plaintiff has raised serious questions going to the merits of his UCL claim.

**B.    Irreparable Harm**

Plaintiff faces irreparable harm. "[I]t is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer*

4

*Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) (collecting cases regarding evictions and foreclosures); *see also Jackmon v. America's Servicing Co.*, 2011 WL 3667478 at *3 (N.D. Cal. 2011) ("It is undisputed that plaintiffs are harmed if they are evicted from their homes or undergo a foreclosure sale."). Defendant initially scheduled the trustee's sale for March 17, 2026, which was only prevented by the Court's Order. ECF No. 12. Defendant still intends to foreclose upon Plaintiff's home. An eviction would be disruptive to Plaintiff's life, and wrongful eviction is not an injury for which remedies available at law are adequate. The risk of irreparable harm weighs heavily in favor of granting the TRO.

### C.   Balance of Hardships

The balance of hardships weighs in Plaintiff's favor. The harm that Plaintiff will suffer if his home is foreclosed upon far outweighs the harm to Defendant if that foreclosure is delayed pending the resolution of this case. *Ozkay v. Equity Wave Lending, Inc.*, No. 20-CV-08263-JST, 2020 WL 7696058, at *2 (N.D. Cal. Dec. 28, 2020) ("Causing a slight delay for Defendant's sale of the Subject Property is greatly outweighed by Plaintiff's potential loss of his home." (citation omitted)).

### D.   Public Interest

Public interest weighs in favor of granting the TRO. There is a public interest in enforcing the Homeowner Bill of Rights, which was enacted "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4. Here, granting the TRO holds Defendant to its obligation to take proscribed, appropriate steps under the Homeowner Bill of Rights and gives Plaintiff a "meaningful opportunity" to apply for a loan modification.

### E.   Security

Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by party found to have been wrongfully enjoined or restrained." Fed.

United States District Court
Northern District of California

R. Civ. P. 65(c). Defendant has a secured interest in the Property and will be permitted to proceed with foreclosure if Plaintiff's claims are ultimately denied. The Court finds that no security is required.

## IV.    CONCLUSION

Because the *Winters* factors favor granting a TRO here, Plaintiff's motion is GRANTED. Defendant, its officers, agents, servants, employees, and all persons acting in concert with Defendant or on Defendant's behalf, are enjoined from directly or indirectly initiating foreclosure proceedings on the Property pending further order of the Court. This temporary restraining order shall take effect immediately and shall remain in effect until further order of this Court.

The Court orders Defendant to show cause why a preliminary injunction should not issue to restrain and enjoin the sale of Plaintiff's Property pending a trial of this action. Any response or opposition to this Order to Show Cause must be filed no later than May 8, 2026. Plaintiff's reply is due May 22, 2026. The Court will hold a hearing on the Order to Show Cause on June 3, 2026, at 10:00 a.m.

**IT IS SO ORDERED.**

Dated: April 20, 2026

_____

Noël Wise
United States District Judge